IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALLIED SIGNAL TECHNICAL            :
SERVICES CORP.                     :
                                   :
v.                                 :   Civil Action WMN-00-3730
                                   :
M/V DAGMAR MAERSK, <u>et. al.</u>         :

### MEMORANDUM

Before the Court are Plaintiff's Motion for Summary Judgment (Paper No. 29), Defendant Maersk's Motion for Summary Judgment (Paper No. 27), and Defendant Connor's Motion for Summary Judgment (Paper No. 28). The motions are ripe for decision. Upon a review of the pleadings and applicable case law, this Court determines that no hearing is necessary (Local Rule 105.6) and that Plaintiff's motion will be denied, and that Defendants' motions will be granted.

### I. BACKGROUND

This case involves a claim for damage to a space telescope owned by Plaintiff, Allied Signal Technical Services Corp., which was shipped by Defendants, J.S. Connor, Inc. (Connor) and Maersk, Inc., from Baltimore, Maryland to Salerno, Italy. Plaintiff, through project manager Mike Selden, contacted Defendant Connor for the inland U.S. and U.S. port to Italian port portion of the shipment. Because Defendant Connor did not own any ocean

1



carriers, it acted as a non-vessel operating common carrier (NVOCC) and contacted Defendant Maersk to perform the actual ocean shipment. Plaintiff then arranged for Pietro, Balena & Figli, S.L.L. (Balena) in Italy to clear the cargo at Selerno through Italian customs and have a truck available to transport the telescope to its final destination in Italy.

On the day of the shipment, the telescope was packaged in wood crates, trucked to Baltimore, and placed on a flatrack container and secured with three metal bands. The flatrack was then loaded on a barge in Baltimore. A surveyor retained by Plaintiff's insurance company, Bernie O'Connor, observed the loading and stated that it was without incident. Additionally, Defendant Connor issued a clean bill of lading stating that the flatrack with the two crates had been received "in apparent good order and condition." Defendant Maersk also issued a clean bill of lading, attesting to the receipt of the flatrack and two crates in good order and condition. The cargo was barged to Norfolk where it was loaded on the ocean carrier for its shipment to Italy.

The ocean carrier stopped at the Italian port of Gioia Tauro, south of Salerno. When Selden learned of the planned stop, he arranged for a surveyor from Holme & Company to be present at the port. The flatrack and two crates were discharged

from the ship in Gioia Tauro by a container crane and then transported shipside by a portable container crane to a place on the pier. The flatrack and two crates were stored in the container yard for eight days.

The flatrack and crates were then loaded on to another ship and transported to Salerno. The cargo was again discharged by a container crane and transported to a place of rest on the pier. Another surveyor from Holme & Company was present to observe the flatrack. The surveyor took pictures of the cargo, and the photographs show that one of the metal bands holding the crate to the flatrack had been replaced with a blue nylon strap, the plastic covering the crate had become torn in several places, and grease was present at several locations on the crate. The cargo was removed from the flatrack by an overhead crane and placed on an air ride trailer which transported the cargo to Matera.

Plaintiff discovered damage to the telescope during its installation in Matera, Italy. Three lever arms with connecting weights had broken loose from the primary mirror of the space telescope. The two parts had been connected using a strong epoxy. As a result of the detachment, the accuracy of the telescope was affected, and Plaintiff estimates $500,000 of direct and indirect damage to the equipment. Plaintiff brought this action against Defendants to recover for damage to the

telescope. Plaintiff now moves for summary judgment as to liability, arguing that it has established a prima facie case of liability against Defendants, and Defendants have not shown that the actual cause of damage was an exception allowed Defendants under the U.S. Carriage of Goods by Sea Act (COGSA). Defendants move for summary judgment as well, arguing that Plaintiff has failed to establish a prima facie case of liability against Defendants.

## II. LEGAL STANDARD

A moving party is entitled to summary judgment only if it can show that there exists no genuine issue as to any material fact, and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Blue Ridge Ins. Co. v. Puig, 64 F. Supp.2d 514 (D. Md. 1999) (citing, inter alia, Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

When both parties file motions for summary judgment, the court applies the same standards of review. Taft Broadcasting Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991); ITCO Corp. v. Michelin Tire Corp., 722 F.2d 42, 45 n. 3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material facts on a motion for summary judgment--even where ... both parties have filed cross motions for summary judgment.")(emphasis omitted), cert. denied, 469 U.S. 1215

(1985). The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." Towne Mgmt. Corp. v. Hartford Acc. and Indem. Co., 627 F.Supp. 170, 172 (D. Md. 1985)(quoting Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2720 (2d ed. 1993)).

### III. DISCUSSION

Defendants issued bills of lading for the cargo at issue for the ocean voyage between Baltimore and Salerno, Italy. "A bill of lading is a receipt given by a carrier for goods shipped, and a contract containing the terms of their carriage. Bills of lading for the carriage of 'goods by sea to or from a port in the United States, in foreign trade' are governed by COGSA." AIG Europe, S.A. v. M/V MSC Lauren, 940 F.Supp. 925, 929 (E.D. Va. 1996), aff'd. 134 F.3d 362, 1998 AMC 1161 (4th Cir. 1998) (citing 46 U.S.C. §§ 1300-1315). To establish a prima facie case against Defendants under COGSA, Plaintiff must demonstrate that the cargo was damaged while in their control. Id. (citing Bally, Inc. v. Zim America, 22 F.3d 65, 69-69 (2nd Cir. 1994)). It is well settled that Plaintiff can satisfy this burden by showing, (1) delivery of the goods to the carrier in good condition, and (2) outturn by the carrier in damaged condition. Westway Coffee Corp. v. M/V Netuno, 675 F.2d 30, 32 (2nd Cir. 1982). To meet

the second element of the prima facie case under COGSA, Plaintiff must establish by a preponderance of the evidence that the telescope was damaged at the time it was discharged at Salerno. U.S.A. v. Afram Lines, et al., 1995 WL 224616, at *7 (S.D.N.Y. 1995). If Plaintiff proves its prima facie case, the burden then shifts to Defendants to show that the loss or damage falls within one of the COGSA exceptions. Westway, 675 F.2d at 32.

In this case, when Plaintiff tendered the cargo to Defendants, it was not feasible for Defendants to determine the actual condition of the cargo without breaking open the crate. In these situations, courts have required more than a clean bill of lading to establish that the cargo was in good condition at the time of delivery to Defendants. Transatlantic Marine Claims Agency, Inc. v. M/V IBN Zuhr, 1994 WL 654548, at *2-3 (S.D. Ga. 1994). In addition to the clean bill of lading, Plaintiff offers the observations of Selden and O'Connor. Pl.'s Mot. at 11. Selden was present at the loading of the crate in Greenbelt, Maryland and observed no damage to the crate. Id. O'Connor was present when the crate on the flatrack was loaded on the barge in Baltimore, and he also observed no damage to the crate. O'Connor Decl. at 1. Although these two observations establish that the crate itself was in good condition, they do not establish the actual condition of the telescope within the crate. Finally,

6

Plaintiff offers evidence that the telescope was tested in Maryland before it was shipped, and everything worked fine. Pl.'s Opp. at 4; Selden Dep. at 161. The Court will accept this evidence as establishing that the cargo was delivered in good condition.

With respect to the second element of liability, there is a statutory presumption that the cargo was delivered in good condition if notice of damage is not provided to the carrier within three days of delivery. 46 U.S.C. § 1303(6). It is undisputed that Plaintiff failed to notify either Defendant within the three day statutory period. The statutory presumption, however, is rebuttable and becomes conclusive "only where there is no other evidence on the disputed point." Pacific Employers Ins. Co. v. M/V Gloria, 767 F.2d 229, 238 (5th Cir. 1985) (quoting Socony Mobile Oil Co., Inc. v. Texas Coastal and Int'l, Inc., 559 F.2d 1008, 1012 (5th Cir. 1977)). If Plaintiff proves by a preponderance of the evidence that the cargo was damaged prior to final delivery, the presumption under Section 1303(6) disappears. Afram, 1995 WL 224616, at *8.

In this case, Plaintiff discovered the damage to the telescope during its installation in Matera. Pl.'s Mot. at 7. When this condition was discovered, Selden notified Plaintiff's insurance broker who notified the insurance carrier, Fireman's

Fund. Fireman's Fund retained Salvadore Consigliaro of International Consultants and Surveyors (ICS) to attend at Matera and determine the cause and extent of damage to the space telescope. Id. Over the course of the next year, ICS made various and repeated investigations at Matera and reviewed the pictures and reports issued by the Holme & Company surveyors. ICS Final Report, Pl.'s Exh. C, at 1, 11-13. Consigliaro's final opinion was that the damage may have been caused by the crate hitting against crane equipment during handling. Id. at 12. Consigliaro based his opinion, at least in part, upon the grease stains and tears in the plastic. Id. Plaintiff then hired Captain Ivo Knobloch of Matthews, Matson & Kelley to investigate the circumstances of the loss. Pl.'s Mot. at 8. Captain Knobloch examined the Holme & Co. report, attached photographs, the ICS report, and the bills of lading. Knobloch Report at 1. Knobloch relied heavily on the photographs of the cargo which showed the grease stains, torn plastic covering, and replaced strap. Id. at 8-9. From these documents, Knobloch concluded that "it is more likely than not that the flatrack carrying the crated telescope had been dropped at some time during the handling at the Transshipment Port of Gioia Tauro." Id. at 8.

Before Plaintiff commissioned these reports, it hired surveyors from the Holme & Company to supervise the loading and

unloading of the cargo in Gioia Tauro and Salerno. Holme Report, Pl.'s Exh. A. These surveyors created a survey report in which they noted that in Gioia Tauro, the containers were in "good condition" and that the plastic sheeting on one of them "had three small tears of insignificant relevance." Id. at 3. The surveyors further noted that none of the containers sustained knocks during the time of their observation, and in fact, the surveyors had asked the operators to take "particular care" when handling the containers. Id. at 4. Later in Salerno, the surveyors observed that all the containers were structurally sound, and no damage was caused during the handling. Id. at 6.

Upon arrival of the cargo in Salerno, Balena (Plaintiff's agent, trucker, and customs broker) was present for the release of the cargo, and Defendant Maersk issued a clean receipt to Balena showing no damage to the cargo. Salerno Container Terminal Fax, Def. Connor's Exh. N. If Balena had noted any material damage, he would have stated so on the face of the Maersk Interchange Receipt and countersigned this document back to Maersk's agent.[1] Instead, Balena gave the document back to Defendant Maersk, with no countersignature or any written

---

[1] According to Defendant Maersk's procedure, "only in case of irregularities, in the seal integrity/container, a remark would have been appended on the interchange, countersigned by the Forwarder/Receiver." Salerno Container Terminal Fax, Def. Connor's Exh. N.

9

indication that the cargo might have sustained even minimal damage while in the custody and control of Defendants.[2]

Additionally, one of Plaintiff's own employees states that the cargo photos show no damage. At the time of the shipment, Scott Derr was employed as a Logistician III and was responsible for shipping, facilities, and packing. Derr Dep. at 13. Derr had been employed with Plaintiff for twenty-two years and estimated that he handled twenty-five ocean shipments to international destinations during that time. Id. at 42-43. Derr stated that Selden gave him several photographs of the cargo at issue, and according to Derr, the photos showed "no damage, holes or destruction of a crate. Maybe a mark, you know, discoloration, rubbing. Nothing other than that." Id. at 127. Further, Derr stated that crates are frequently damaged on ocean shipments; "'[t]hat's the life of ocean freight.' When you take ocean freight, you accept excessive handling because of the ride, the ocean."[3] Id. at 122. In contrast to the ICS report and

---

[2] Although Balena did not indicate any damage or irregularities on the receipt, he was aware of the grease stains and torn plastic, because when he delivered the cargo to Selden in Matera, Balena pointed it out to him. Selden Dep. at 209.

[3] For purposes of admissibility, this Court will allow Derr's statements to be used against Plaintiff as an admission because the "statement concerns a matter within the scope of the employee's agency or employment. . . ." Tucker v. Norfolk & Western Ry. Co., 849 F.Supp. 1096, 1098 (E.D. Va. 1994) (discussing Federal Rule of Evidence 801(d)(2)(D)). Derr is an

10

Knobloch's report, which placed heavy emphasis on the marks and torn plastic, the Plaintiff's surveyors, agents, and an employee with experience in ocean shipping, did not consider such damage to be anything out of the ordinary with respect to ocean shipments.

Based on the above discussion, this Court finds that Plaintiff has failed to rebut the statutory presumption of Section 1303(6). Although Plaintiff does provide two separate opinions as to how and when the damage occurred, these opinions are based on nothing more than bald speculation.[4] Defendants, in contrast, point to eyewitness statements (prepared by Plaintiff's surveyors), photographs, and the clean delivery receipt issued in Salerno as evidence that nothing out of the ordinary occurred during the shipment. Because the Court finds that Plaintiff failed to establish the existence of an element essential to its case, namely that the cargo was outturned in damaged condition, summary judgment must be granted in favor of Defendants.

---

employee of Plaintiff whose work concerns transportation logistics, and the comments at issue involve an ocean shipment.

[4] The ICS report opined that the damage <u>may have been</u> caused by the crate hitting against crane equipment during handling. ICS Final Report, Pl.'s Exh. C at 12 (emphasis added). Knobloch concluded that the cargo might have been dropped in Gioia Tauro, causing the damage to the telescope, but testified in deposition that every lowering of cargo involves the risk of a hard, damage-inducing landing. Knobloch Dep. at 17.

11

Celotex, 477 U.S. at 322.

**IV. CONCLUSION**

Based on the evidence submitted in this matter, this Court finds that Plaintiff failed to establish a prima facie case of liability against Defendants. Accordingly, Defendants' Motions for Summary Judgment will be GRANTED. A separate order consistent with this memorandum will issue.

					_____
					William M. Nickerson
					Senior United States District Judge

Dated: October 9, 2002